Arnold G. Fraiman, J.
This is a motion by plaintiff Thomas J. Lipton, Inc. (Lipton) for a preliminary injunction enjoining defendant Borden Inc. (Borden) from simulating the elements of plaintiff’s package in any combination that may confuse the public, on the ground that defendant is committing acts of unfair competition against plaintiff.
The product involved is an instant soup packaged for single servings. Plaintiff markets its product as Lipton Cup-a-Soup. Defendant’s product is identified as Wyler’s (a subsidiary company) Cup of Soup. Lipton introduced its product in a limited marketing area in 1970, accompanied by a substantial advertising campaign. While instant soups had been on the market for some time, the concept of a dehydrated soup which could be instantly rehydrated by the addition of boiling water and served in individual meal units was a novel one which apparently met with substantial success. By August, 1972 Lipton had gradually expanded its sales throughout the country and had spent over $4,000,000 promoting its product. In that same month, Borden introduced its product on the market. Both products are sold in packages which are identical in size (approximately 3% inches by 5 inches) and which have a flip-top cover. Each package contains four sealed packets of dehydrated soup, each of which, when poured into a cup with the, addition of hot water, makes a single six-ounce serving. Both packages contain a photograph on their faces of a clear glass cup into which water is being poured from a kettle.
In September, 1972, Borden introduced a second similar product on the market which it packaged in a box which was prominently identified as “ Borden cream style cup of soup.” This package, although the same size as the earlier Lipton and Borden cartons, does not have a flip-top lid and has a different type photograph than that employed on the other packages.
After unsuccessfully seeking to have Borden voluntarily change its packaging so as to avoid alleged confusion between *759 its and Lipton’s product, Lipton commenced an action to permanently enjoin Borden from continuing its alleged unfair competition, and simultaneously brought the instant motion for temporary relief. Specifically, Lipton seeks to restrain Borden from using the designation ‘ ‘ Cup of Soup ’ ’ and the photograph on Borden’s first package and from using the phrase “ Cup of Soup ” on its second package.
Basically, it is Lipton’s contention that Borden has packaged its soup in a manner so similar to its own packaging that the buying public will be confused into associating Borden’s soup with Lipton’s. Stated another way, Lipton claims that Borden, by so closely imitating its package, is attempting to palm off its instant soup as Lipton’s. Lipton concedes that it has no basis for objecting to any specific item of similarity between its and Borden’s package, but it maintains that the combination of some nine elements of similarity between the two packages constitutes a “ conspiracy of ingredients ” which justifies the relief sought. (Corning Glass Works v. Pasmantier, 30 F. Supp. 477, 481 [S. D. N. Y. 1939].)
The test to be used in determining whether a palming off in fact exists is whether defendant’s package so clearly resembles that of plaintiff that the average or casual purchaser will be deceived into thinking that the defendant’s product was actually one of plaintiff’s It is not enough that the packages can be distinguished by a discriminating purchaser. The incautious, the ignorant and the unthinking buyer must also be protected. (Chesebrough Mfg. Co. v. Old Gold Chem. Co., 70 F. 2d 383 [6th Cir., 1934], cert. den. 293 U. S. 599; Dutton & Co. v. Cupples, 117 App. Div. 172 [1st Dept., 1907]; Florence Mfg. Co. v. Dowd & Co., 178 F. 73 [2d Cir. 1910].) The defendant must exercise reasonable care to avoid deception and to inform the buying public that it, rather than plaintiff, is the source of the product it is offering for sale. (Pocket Books v. Meyers, 292 N. Y. 58 [1944].)
Resolution of the instant motion requires a comparative analysis of the packages in question. As noted, each is approximately 3% inches wide and 5 inches high and contains four single packets, each for an individual six-ounce serving of soup. On the face of each package is a photograph of the spout end of a kettle from which water is pouring into a clear glass cup, with the soup being visibly formed from the combination of soup mix and water. Both photographs present a side angle view of the cup. In each, the spout and cup handle are to the right. The flip-top lid of each carton overlaps the front and sides of *760 the carton by one inch. The front side of plaintiff’s flip-top bears the words “ Lip-ton ” in red lettering and “ Cup-a-Soup” beneath it in black lettering. The background of the flip-top is white. The defendant’s flip-top prominently displays the single word “ Wyler’s ” in red, in approximately one-half inch letters, on a yellow background. The word “ Wyler’s ” also appears prominently on each side of the flip-top and at the top of the reverse side of the package. In addition, its mark, “ Borden ”, appears at the bottom left of the package in smaller print. The words “ Cup of Soup ” appear in large print in approximately the middle of defendant’s package, just above the rim of the cup. The background color of the Lipton package, other than the white flip-top, is red. The color of Borden’s flip-top is always yellow but the rest of the package varies in color, depending upon the flavor of soup it contains. In the case of its beef flavor noodle soup, the color of its package is a reddish brown which is very similar to Lipton’s red package.
Although there are other distinctions in the package designs, such as the color of the spouts (one is brown, the other green) and the .shape of the cups in the photographs (one is concave, the other convex), one would have to conclude that they are substantially isimilar to each other in design and in their designation of “ Cup-a-Soup ” and “ Cup of Soup ”, respectively.
However, this is not the end of the matter. As plaintiff has reason to be aware, similarity as to name and packaging does not by itself necessarily establish palming off. (Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F. Supp. 129 [S. D. N. Y., 1972].) The photograph of a cup being filled with hot water which rehydrates the soup mix in the cup to become instant soup cannot be the exclusive property of one company. The instantaneous creation of soup by pouring water into a cup is the essence of the product sold by both plaintiff and defendant, and a photograph of the process is the most natural way of describing the product being sold. The fact that the cup into which the water is being poured is transparent is not unusual and in fact is the only way in which the soup mix can be shown mixing with the water. With respect to the term “ Cup of Soup ”, this is the normal, common phrase for describing a quantity of that liquid refreshment normally consumed by an individual at a single sitting. It is in no way unique or fanciful. Indeed, as defendant notes in its opposing affidavits, it is used on virtually every restaurant menu to describe an individual serving of soup. Lipton acknowledges that it has no special right to any of these elements, but as noted above, it claims that *761 it is the combination of all the similar factors that makes Borden’s package an unfair copy of its own. The defendant, however, should not be deprived of the usefulness of the photograph and the term “ Clip of Soup ” in promoting its product if, by distinctively labeling its package, it has put the consumer on notice ¡as to the source of its product, and thus avoided a likelihood of confusion. (Kellogg Co. v. National Biscuit Co., 305 U. S. 111 [1938].)
In Pocket Books v. Meyers (292 N. Y. 58, supra) the court had before it a case involving the publishers of competing pocket size reprints of literary works. Plaintiff had originated the idea of publishing reprints in that form and it sought to enjoin defendants from palming off their books as the plaintiff’s. The products of both publishers were of an identical size, so as to fit in one’s coat pocket, and had the same laminated cover. The description “ pocketbook ” (a registered trade-mark) appeared on plaintiff’s books and the words “pocket-size books ” appeared on defendants’. In short, as the trial court indicated, they were “practically indistinguishable ” (178 Misc. 59, 60). As here, no copyright or monopoly was claimed for the use of the word “pocket” or for any of the other elements on the covers of plaintiff’s books. In granting ¡the injunctive relief sought by plaintiff, the Appellate Division held that it was the combination of all the common elements that was deceptive. However, the Court of Appeals reversed and denied plaintiff injunctive relief on the ground that defendants had exercised reasonable care to avoid deception and to inform the public of the source of its reprints. In so holding the court noted that the legend “ Avon pocket-size books ” appeared somewhere on the cover of each of defendants’ reprints and also on the binding edge, as well as within the book itself.
In the instant case, defendant has placed the Wyler mark in a prominent place in large print on the face of the package and on all sides, clearly indicating the source of the product. (See also Dell Pub. Co. v. Stanley Pub., 9 N Y 2d 126 [1961].) Where, as here, intent to deceive is an issue, “ it is doubtful that one who displays his house mark prominently on the front of his product is attempting to palm that product off as another’s.” (Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F. Supp. 129, 136, supra).
Each ease in this area of unfair competition must be decided upon its own facts and the cases relied upon by plaintiff are factually distinguishable. Thus, in Brillo Mfg. Co. v. Levine (236 App. Div. 488 [1st Dept., 1932]) the defendant packaged its steel wool in a carton which was virtually identical in color *762 to plaintiff’s and which also hore a picture of a triangle, a trade-mark of plaintiff. In finding that this constituted unfair competition, the court noted (p. 489) that “ The only difference which defendant [could] point out [was] that the green color upon his package [was] of a different shade from that used by plaintiff ”.
In International Latex Corp. v. Flexees, Inc. (281 App. Div. 363 [1st Dept., 1953]), also relied upon by plaintiff, the plaintiff sold its girdles in a tubular package which bore a picture thrice repeated of the rear view of a girl wearing a girdle with arms upstretched above her head holding a round sign containing the inscription “ Playtex ”. Defendant also sopght to sell its girdles in a tubular package which was shorter than plaintiff’s but which bore the identical design as plaintiff’s, except that •the round sign held by the girl in defendant’s package contained the inscription “ demi-tasse ” or “ Flexees ”. The court, in finding unfair competition, noted that this was the only distinction in the design of the two containers. Moreover, it found (pp. 367-368) that the use of the term “ demi-tasse ” on defendant’s shorter carton “ facilitates the implied suggestion that it is a smaller and related product to that sold in plaintiff’s [longer] tube. The placing of this term in the round inscription area held in the upstretched arms of a similarly clad girl strengthens this suggestion. ’ ’
Here, the differences between the packages are of a more substantial character than in either of the cited cases but, more importantly, the source of defendant’s product is clearly indicated on its package. Even an unthinking customer desiring to purchase Lipton’s soup can see by a glance at defendant’s package that she has the “ wrong thing.” (Ralston Purina Co. v. Thomas J. Lipton, Inc., supra, p. 136.) Thus, no basis exists for the relief sought by plaintiff herein.
Turning to the package marketed by defendant commencing in September, 1972, examination discloses that its design bears little resemblance to plaintiff’s. While the words “ cup of soup ” appear in prominent lettering on the face of the carton, so too does the trade-mark “Borden”. The photograph employed on this package, which as noted, contains ¡a “ cream style ” soup, is of an opaque cup viewed from the top, being filled with water, and is totally dissimilar to the design on plaintiff’s package. A fortiori, there would be no confusion by purchasers of the two products.
For the foregoing reasons, plaintiff’s motion for a temporary injunction is in all respects denied.