## In re IRVING DREW CO.

(Court of Appeals of District of Columbia. Submitted January 15, 1924. Decided April 7, 1924.)

### No. 1620.

1. **Trade-marks and trade-names and unfair competition ⊜43—"Arch Rest," as mark for shoes, held not descriptive, and entitled to registration.**

   The words "Arch Rest," as a trade-mark for boots, shoes, and slippers, is not descriptive, and is entitled to registration.

2. **Trade-marks and trade-names and unfair competition ⊜3(1)—Meaning to be given to words constituting mark stated.**

   The meaning which should be given to the words constituting the mark is the impression and signification which they would convey to the public.

Appeal from the Commissioner of Patents.

Application by the Irving Drew Company for registration of a trade-mark for boots, shoes, and slippers. From a decision refusing registration, applicant appeals. Reversed.

James R. Hodder, of Boston, Mass., for appellant.

Theodore A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a decision of the Commissioner of Patents, which held that the words "Arch Rest" were descriptive of the goods, and affirmed the decision of the Examiner, refusing to register the words as a trade-mark for boots, shoes, and slippers.

[1] It appears from the record that the mark "Arch Rest" was first used on boots and shoes in 1909, by the Utz & Dunn Company, and that the applicant, the Irving Drew Company, began to use it in 1912. Prior to the decision of the Commissioner, the applicant purchased the business of the Utz & Dunn Company, and all its right, title, and interest in and to said mark. It may be considered as established, therefore, that the use of the mark by the applicant and its predecessors in interest dates back to 1909.

Shoe manufacturers other than the Utz & Dunn Company also made use of the mark, and some of them sought to register it in the Patent Office. Upon being notified, however, of the claims of the Irving Drew Company, such shoe manufacturers ceased to use the words "Arch Rest," and recognized the prior right thereto of the Irving Drew Company. Whether "Arch Rest," the mark proposed for registration, is descriptive of the boots, shoes, and slippers to which it is applied by the applicant, is the question presented by this appeal.

[2] The meaning which should be given to the words constituting the mark is the impression and signification which they would convey to the public. If "Arch Rest" is a term which would be recognized by the public as the designation or name of some part of a boot, shoe, or slipper, it would be clearly descriptive. On the other hand, if there be no part of a boot, shoe, or slipper which is known as the arch rest, and the public understands from "Arch Rest" that the *use* of footwear stamped with that mark will give rest, aid, or support to the arch of the foot, and not rest or support to the arch of the boot, shoe, or slipper, it is not descriptive of the goods, but is merely suggestive.

In our opinion, rest, ease, or support to the arch of the foot was the meaning which the applicant intended to convey by the mark, and was the meaning accorded to it by the public. That interpretation finds strong support in the fact that a boot, shoe, or slipper which would give rest to the *arch of the foot* would be far more likely to attract buyers than would a boot, shoe, or slipper which had a rest or support for the *arch of the footwear*. Indeed, the Patent Office,

when it registered such marks as "Archbrace," "Repose Arch," "Arch Doctor," "Arch Comfort," "Arch Preserver," "Arch Developer," "Arch Grip," and "Arch D-Fend-R," must have construed the word "arch" to mean the arch of the foot, when used as part of trade-marks for footwear. Just why "arch" should be given a different meaning when used in conjunction with the word "rest" is not apparent.

"Rest" does mean, among other things, "a support, * * * as a rest for a foot, a gun rest," and when "rest" is used in that sense, and is the designation or part of the designation by which an article or part of an article is commonly known, it must be regarded as descriptive. Foot rests and head rests are well-known designations of parts of dentists' and barbers' chairs, and are therefore descriptive. There is, however, no part of boots, shoes, or slippers which is commonly known as the arch rest, and from that it follows that "arch rest" cannot be considered as descriptive of such articles. The following cases, cited in the brief for the Commissioner, are not in point: In re Alvah Bushnell Co., 49 App. D. C. 133; Toledo Scale Co., 52 App. D. C. 103;[1] In re Kawneer Manufacturing Co., 48 App. D. C. 587; Florence Manufacturing Co. v. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565; In re Swan & Finch Co., 49 App. D. C. 95; Burt v. Coes & Young Co., 212 Mass. 134, 98 N. E. 596.

In the Bushnell Case registration was refused for the words "Safe-T Seal." The refusal was upheld by the court, on the ground that the public would identify the goods to which the mark was attached as safety-seal envelopes or safe-seal envelopes, for which class of envelopes a patent had been issued to others than the applicant, and which were commonly known as safety envelopes or safety-seal envelopes.

In the Toledo Scale Company Case, registration was sought for the words "Honest Weight" as a trade-mark applicable to scales. The court interpreted the words "Honest Weight" to mean correct or accurate, and therefore indicative of the quality of the article.

In the Kawneer Manufacturing Co. Case, the registration of the word "Easyset" as a trade-mark for window sashes was properly refused, inasmuch as the word was designed to produce and did produce the impression that the parts of the window sashes were easily set in place, or that the *glass* of the sash was so set that it would "ride" easily, without danger of breakage. "Easyset" consequently announced to the public an inherent quality of the sashes, and was therefore held not to be registrable.

In the Swan & Finch Co. Case, the Patent Office refused to register the words "Slo Flo" for lubricating grease for high-speed machines, and that decision was upheld by the court on the ground that "Slo Flo" was descriptive of the viscosity of the grease and of its quality of flowing slowly.

In Burt v. Coes & Young Co., a bill in equity was brought to restrain the defendant from using its trade-mark "Flexible Arch." That mark unmistakably referred, not to the arch of the foot, but to the arch of the *shoe,* and was therefore clearly descriptive. Registra-

[1] 281 Fed. 607.

tion of the mark does not seem to have been directly involved in that case.

More to the point and supporting applicant's contention is a decision of the United States Circuit Court of Appeals for the Ninth Circuit, in which it was held that the terms "Arch Builder" and "Heel Leveler" were susceptible of exclusive appropriation as trade-marks, inasmuch as they were used in a secondary sense. Wonder Mfg. Co. v. Block, 249 Fed. 748, 749, 161 C. C. A. 658.

The description, the inherent qualities, the characteristics, of boots, shoes, and slippers, is one thing, and the effect which the use of the articles may produce on the wearer is another.

The decision appealed from is reversed.